**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**TODD E. EDMONDS**                                                           **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:23-CV-00237-JHM**

**JERRY COLLINS,** *et al*.                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion by Defendants Renesha Stone and Jeri Hayden for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DN 120). Plaintiff Todd E. Edmonds filed a response. (DN 132). Defendants filed a reply. (DN 134). Thus, this matter is fully briefed and stands ripe for decision.

### I.

During the time relevant to this complaint, Plaintiff was incarcerated as a pretrial detainee at the Louisville Metro Department of Corrections ("LMDC"). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional and civil rights. (DN 1). The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A and allowed both a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim, and a claim under Title II of the Americans with Disabilities Act ("ADA") against Defendant Louisville Metro Government ("LMG"). (DN 11). Further, the Court directed Plaintiff to file an amended complaint properly naming other Defendants. (*Id*.). Thus, Plaintiff filed an amended complaint. (DN 13). Upon review of the amended complaint, the Court allowed individual-capacity claims to proceed thusly: First Amendment free-exercise claims against Defendants Jerry Collins and Meagan Kilkelly; Fourteenth Amendment equal-protection claims against Defendants Collins and Kilkelly; Fourteenth Amendment claims for deliberate indifference to Plaintiff's health/safety against

Defendants Collins, David Puckett, Renesha Stone, and Jeri Hayden; and Fourteenth Amendment claims for deliberate indifference to a serious medical need against Defendants Stone and Hayden. (DN 16).  Defendants Stone and Hayden now move for summary judgment on Plaintiff's claims against them.[1]  (DN 120).

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

---

[1] This Memorandum Opinion and Order only considers claims against Defendants Stone and Hayden.  Claims against other Defendants shall be adjudicated via separate Memorandum Opinion and Oder.

2

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs.*, Inc., 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

### *A. Plaintiff's Allegations*

Plaintiff alleges that, during his stay at the LMDC, he was housed in non-handicap accessible dormitories multiple times. (DN 13, PageID #: 86-87). Plaintiff's deliberate-indifference claims stem from two instances where Plaintiff was injured while attempting to shower in non-handicap accessible showers.[2] (*Id*.).

Plaintiff contends that the first injury occurred as a result of a fall in the shower in January 2022. (*Id*., PageID #: 86-87). Plaintiff alleges that he sustained serious injuries to his arm and spine as a result of this fall. (*Id*.). Plaintiff maintains that he was not adequately treated for this fall, having only had his blood pressure taken and being prescribed Tylenol and Ibuprofen for nine (9) months until he was taken to a hospital for care where he eventually underwent surgery for

---

[2] Notably, Plaintiff only filed a grievance related to the second fall, which occurred on July 22, 2022. (DN 123-7, PageID #: 2127).

3

injuries to his arm and physical therapy for the injury to his spine. (*Id.*, PageID #: 87).  Plaintiff

maintains that Defendants did not allow him to adequately receive physical therapy providing that

he was supposed to receive physical therapy for his spinal injuries one to two times a week for six

weeks, but that he only received physical therapy every two to three weeks. (*Id.*).

With regard to the second fall, which occurred on July 22, 2022, Plaintiff maintains that he

was moved to another non-handicap accessible dorm with a chair placed in the shower.  (DN 1,

PageID #: 5-6).  While showering, Plaintiff fell again and suffered lacerations to his amputated

leg.  (*Id.*).  Plaintiff claims that his lacerations were not cleaned or treated and that he was given

an antibiotic by another inmate.  (*Id.*).

With regard to Defendants Stone and Hayden, Plaintiff maintains that:

> [Defendants] are both medical directors for the medical department in the jail. They
> make the final decisions on inmate's healthcare. Both [Defendants] violated the
> Plaintiff's Fourteenth Amendment right when they <u>failed</u> and <u>delayed</u> to give the
> Plaintiff adequate medical care after the fall that injured his arm and spine.  The
> Plaintiff suffered for nine (9) months after the injuries to his arm and spine, before
> he was taken to the hospital to see how serious his injuries was.

(DN 13, PageID #: 89 (emphasis in the original)).

*B. Defendants' Motion for Summary Judgment*

Defendants argue generally that they are entitled to summary judgment on Plaintiff's

deliberate indifference claims for four reasons: (i) Plaintiff failed to exhaust his administrative

remedies prior to filing suit; (ii) Plaintiff provided no evidence of any act or omission of

Defendants to support his deliberate indifference to Plaintiff's health and/or safety claim; (iii)

Plaintiff has provided no evidence of any act or omission of Defendants to support his deliberate-

indifference to Plaintiff's serious medical needs claim; and (iv) Plaintiff has not provided expert

evidence to support his claims.  (DN 120-1, PageID #: 1161-68).

4

With regard to the argument that Plaintiff has failed to exhaust his administrative remedies, Defendants argue that the proper exhaustion of administrative remedies means using all steps that the agency holds out and doing so properly; so that the agency addresses the issues on the merits. (*Id.*, PageID #: 1161; *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Defendants point to LMDC policy which provides generally that when a grievance is filed and, if denied by the administration, the prisoner must appeal. (DN 120-2, PageID #: 1174-75). Defendants contend that Plaintiff has not provided evidence that he timely filed grievances and/or appeals; thus, a finding that Plaintiff has not adequately exhausted his administrative remedies is warranted. (DN 120-1, PageID #: 1162).

Concerning Plaintiff's deliberate indifference to health and/or safety claim, Defendants argue that Plaintiff has not introduced evidence to satisfy either the subjective or objective prongs of the deliberate indifference to health and/or safety test. (*Id.*, PageID #: 1163). Specifically, Defendants contend that Plaintiff has not submitted evidence "demonstrating that either [Defendants] personally knew of and disregarded a substantial risk of serious harm as it pertained to the Plaintiff's housing, or that [Defendants ] played in role in Plaintiff's classification or housing assignment whatsoever." (*Id.*). Here, Defendants point to the Kentucky Department of Corrections Policies and Procedures Chapter 18, which generally supports the assertion that decisions regarding housing are made by Kentucky Department of Corrections employees. (DN 20-3, PageID #: 1178, 1180). Defendants argue that they are employed as healthcare workers by Wellpath Healthcare Services as healthcare employes and not the Kentucky Department of Corrections; thus, housing decisions were beyond Defendants' purview and cannot form the basis of a deliberate indifference to Plaintiff's health and/or safety claim. (DN 120-1, PageID #: 1163).

Defendants do admit that, as medical providers, they are empowered to recommend an inmate be moved to medical housing. (*Id*.) Here, Defendants point to a February 12, 2022, Chronic Care Initial Visit for Multiple Medical Problems form, in which Plaintiff was seen by a separate Wellpath Nurse Practitioner who recommended that he be moved to medical housing. (DN 120-4, PageID #: 1187). Notably, neither Defendant was mentioned in this report. (*Id*.). Accordingly, Defendants contend that because they had no direct say in Plaintiff's housing, and Plaintiff has not produced evidence to suggest that Defendants had any involvement in his housing decisions, his deliberate indifference to health and/or safety claim cannot be sustained. (DN 120-1, PageID #: 1164).

With regard to Plaintiff's deliberate-indifference to serious medical needs claim, Defendants argue generally that Plaintiff has not provided evidence that Defendants took actions or inaction detrimental to Plaintiff's health. (*Id*., PageID #: 1165). Conversely, Defendants contend that the medical record supports a finding that Plaintiff was continuously treated for his pain and other health conditions. (*Id*.).

Specifically, Defendants contend that Plaintiff's first fall occurred on January 27, 2022, and that Plaintiff was examined by Nurse Monicah Rotich, who noted that Plaintiff was "already on Tylenol and ibuprofen." (DN 120-6, PageID #: 1729). The same day, an x-ray was performed on Plaintiff's shoulder in which the provider noted:

> Results: No acute fracture or dislocation. The osseus structures appear intact. Joint spaces are narrowed. Soft tissues are unremarkable.

> Conclusion: No acute findings. Degenerative Changes.

(DN 120-5, PageID #: 1250).

Based on these findings, Plaintiff was continued on Tylenol and Ibuprofen. (*Id*.). Plaintiff submitted a health services request on February 10, 2022, in which Plaintiff complained of spinal

6

pain subsequent to the fall; however, when given the opportunity to discuss his spine pain with medical staff, Plaintiff chose to request a battery for his prosthetic leg. (DN 120-6, PageID #: 1725). Plaintiff was also prescribed Meloxicam on February 25, 2022, for his back pain. (*Id.*, PageID #: 1298).

Plaintiff was also seen on March 8, 2022, for his diabetic neuropathic pain where he requested specific medications but was counseled on alternatives. (DN 120-4, PageID #: 1236). On April 4, 2022, Plaintiff was seen for complaints of neck pain and tingling sensations in his arm that had allegedly worsened since his fall. (DN 120-9, PageID #: 2010). Thereafter, Plaintiff was sent for X-rays of his spine finding that "[d]isc space narrowing at C5-7. Anterior endplate osteophytes at multiple cervical levels. Cervical vertebral height and alignment unremarkable." (DN 120-5, PageID #: 1248).

Plaintiff was again evaluated for pain with the provider notes indicating that "PT is the best treatment for pain, and a PT appointment was set for 6/3/2022[.]" (DN 120-6, PageID #: 1637). Plaintiff was subsequently dismissed from PT due to having an ill-fitting prosthetic. (DN 120-8, PageID #: 1883, 1891). Accordingly, an appointment was made to obtain a "shrinker" to allow Plaintiff's prosthetic to fit properly. (*Id.*, PageID #: 1891).

In September 2022, Plaintiff mentioned that he had been losing feeling in his arm since his fall. (DN 120-6, PageID #: 1568). Medical staff informed Plaintiff that this was likely due to carpal tunnel and not a fall. (*Id.*). On October 17, 2022, Plaintiff was referred for a neurosurgical follow-up "for consideration for surgical corrective of multiple neuropathic conditions; radiculopathy, cubital and carpal tunnel syndromes." (DN 120-9, PageID #: 1980-82). On December 1, 2022, Plaintiff underwent an MRI. (DN 120-10, PageID #: 2035). On March 17, 2023, Plaintiff was prescribed Naproxen and advised of the arrangements for wound care following

7

his surgery for Plaintiff's carpel tunnel syndrome.  (DN 120-9, PageID #: 1966).  Notably, the physical therapy exercises for this procedure were to be performed independently, inside Plaintiff's dorm.  (DN 120-9, PageID #: 1961).  Plaintiff continued to complain of pain, for which he was referred to UofL Physicians Restorative Neuroscience, who then referred him to pain management for cervical and facet injections.  (DN 120-10, PageID #: 2022).

Lastly, Defendants contend that Plaintiff has presented no expert evidence to establish that the medical treatment he received was constitutionally inadequate.  (DN 120-1, PageID #: 1167).  Accordingly, Defendants argue that Plaintiff has not provided the evidence necessary to sustain a deliberate indifference claim.  (*Id.*).

### C. Plaintiff's Response

On April 21, 2026, Plaintiff filed a response to Defendants' Motion for Summary Judgment.  (DN 132).  Therein, Plaintiff contends that he had adequately exhausted his administrative remedies contending that "Plaintiff … did file a grievance concerning his medical and safety and accessibility issues on 1/28/22 and never received a response or a copy of his grievances."  (*Id.*, PageID #: 2237).  Further, Plaintiff contends he "went above and beyond" to exhaust his administrative remedies providing that prior to filing his complaint he "contacted the U.S. Depart[ment] of Justice, the [Court], [the ACLU], and other agencies about the grievance system in the jail not working and not allowing inmates to exhausting their administrative remedies."  (*Id.*, PageID #: 2238).  In short, Plaintiff concludes that "Plaintiff did file several grievances before filing suit but was never allowed to exhaust his administrative remedies."  (*Id.*).

With regard to Defendants' argument that Plaintiff has not provided evidence of an act or omission by Defendants that could lead to a finding of deliberate indifference to either Plaintiff's serious medical needs and/or a Plaintiff's health and/or safety, Plaintiff contends that the fact that

it took him 9 months to be referred to an outside physician regarding his injuries is enough to support a finding of deliberate indifference. (*Id.*, PageID #: 2239). Further, Plaintiff maintains that because he is still receiving injections and pain management for his injuries is also proof that Defendants were deliberately indifferent to his medical needs and/or health and safety. (*Id.*). Plaintiff also argues that Defendants were part of the decision to change his housing and that Tylenol and ibuprofen were not adequate remedies to his pain. (*Id.*, PageID #: 2240). Lastly, Plaintiff contends that because he is *pro se* expert evidence is not necessary and that his medical records should suffice. (*Id.*, PageID #: 2239).

### D. Defendants' Reply

On May 1, 2026, Defendants filed a reply outlining two rejoinders to Plaintiff's response. (DN 134). First, Defendants stand on the assertion in their motion for summary judgment that Plaintiff has not adequately exhausted his administrative remedies. In his response, Plaintiff attached an Exhibit that appears to pertain to grievances Plaintiff claims were not properly addressed. (DN 134, PageID #: 2282). Defendants point out that this grievance is dated 11/5/22; and therefore, is outside of the deadline for an administrative appeal per LMDC policy, which provides:

> An inmate who does not receive a response within forty-five (45) days from filing of the grievance shall be allowed to move to the Director's level of review (within five (5) working days). The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance.

(DN 120-2, PageID #: 1177).

Defendants contend that because the policy has a provision for addressing a situation where a grievance may be ignored or not addressed in a timely fashion, which Plaintiff failed to timely

9

do, he cannot say that he has adequately exhausted his administrative remedies.  (DN 134, PageID #: 2283).

Second, Defendants contend that the record reflects nothing more than Plaintiff's disagreement with his medical providers medical judgment as to the necessity and need for immediate surgery, which is insufficient to establish a deliberate-indifference claim, and assuming that he could demonstrate that he had received constitutionally inadequate treatment, he has provided no expert evidence demonstrating that the allegedly inadequate treatment caused his injury.  (*Id*., PageID #: 2284).

## IV.

### *A. Failure to Exhaust Administrative Remedies*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court, interpreting § 1997e, has expressly stated:  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof.  *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).  Accordingly, summary judgment may be granted "'only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.'"  *Id*. at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).  Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence

10

is so powerful that no reasonable jury would be free to disbelieve it.'" *Id*. at 455-56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).  The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and shows that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88).  To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford*, 548 U.S. at 93.  "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90-91.  But an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit.  *Ross v. Blake*, 578 U.S. 632, 642 (2016).

While Plaintiff has complained about two falls, Plaintiff only filed a single grievance concerning treatment related to a fall which provides:

> ON 7/27/22 IN DORM 3B I FELL WHILE GETTING IN THE SHOWER.  I FELL ON THE CHAIR THAT BROKE AND CUT MY LEG IN FIVE PLACES THERE WAS NO HANDICAP RAILING IN THE RESTROOM, SHOWER, ETC. I HAVE ONE LEG AND IN A WHEELCHAIR.  I'VE SHOWN THE CUTS TO SEVERAL NURSES AND HAVE ASKED FOR ANTIBIOTICS SO THAT MY LEG WON'T GET INFECTED.  INMATE ALLEGES ALL I WAS GIVEN WAS BANDAIDS. [PLAINTIFF REQUESTED] THAT I HAVE PROPER MEDICAL ATTENTION SO THAT MY LEG DON'T GET INFECTED.

11

(DN 123-7, PageID #: 2126).

Subsequently, Defendant Stone responded:

> I spoke with [Plaintiff] on 8/4/2022 and [Plaintiff] stated that you no longer needed triple antibiotic ointment, the cuts were healing and someone in the dorm had given you ointment to use.  If you need further medical assistance, please notify medical staff.

(*Id.*, PageID #: 2127).

The general framework of the LMDC grievance policy is that a prisoner files a grievance, the grievance is resolved, and if the resolution is not satisfactory to the prisoner, the prisoner may file an appeal.  (DN 120-2, PageID #: 1173-74).  Importantly, Plaintiff has contended that the LMDC grievance policy did not work properly for him insisting that he did not receive answers to his grievance(s).  (DN 132, PageID #: 2237-38).  As provided for above, Defendant Stone responded to Plaintiff's grievance.  Thus, per LMDC policy, Plaintiff was then to appeal the grievance response.  In relevant part, the LMDC grievance policy provides:

> An inmate who does not receive a response within forty-five (45) days from filing of the grievance shall be allowed to move to the Director's level of review (within five (5) working days).  The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance.

(DN 120-2, PageID #: 1177).

Plaintiff points to a subsequent grievance that was filed on November 5, 2022, requesting responses to grievances that were not addressed as evidence of exhausting his administrative remedies.  (DN 132-1).  Notably, it seems that Plaintiff received a response to his grievance but failed to file an appeal per LMDC policy, and assuming *arguendo* that Plaintiff did not receive a response, he did not seek an appeal within the 50-day timeframe set forth in the LMDC grievance policy.  Accordingly, Defendants have carried their "burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy[.]"  *Morgan v.*

*Ky.*, No. 3:17-CV-00474-JHM, 2018 U.S. Dist. LEXIS 18066, 2018 WL 715468, at *3 (W.D. Ky. Feb. 5, 2018) (quotation marks and citation omitted). A prisoner, like Plaintiff, does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997). The record demonstrates that Plaintiff did not exhaust LMDC's generally available administrative remedies. Consequently, Defendants Stone and Hayden are entitled to summary judgment.

### B. Deliberate Indifference

While Plaintiff's failure to exhaust administrative remedies is fatal to both of Plaintiff's deliberate-indifference claims, the Court notes that the Defendants are also entitled to summary judgment on both deliberate-indifference claims.

Pretrial detainees enjoy a "right to adequate medical care" under the Fourteenth Amendment. *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)). A government official violates this right by acting with "deliberate indifference" to the detainee's "serious medical needs." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)). Mirroring the Eighth Amendment, this deliberate-indifference inquiry contains both an objective and subjective component. *Id*. Accordingly, a plaintiff can make out a deliberate indifference claim under the Fourteenth Amendment by first alleging that the detainee's medical need was "sufficiently serious." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834, (1994)) (detailing the objective component). Second, under prior caselaw, the plaintiff had to show that the official "subjectively perceived facts from which to infer substantial risk to the [detainee], that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Parsons v. Caruso*, 491 F. App'x 597,

13

602 (6th Cir. 2012). This presents a high bar, as "[i]t is not enough that an official 'fail[s] to alleviate a significant risk that he should have perceived but did not.'" *Parsons*, 491 F. App'x at 602 (quoting *Farmer*, 511 U.S. at 838). In response to recent Supreme Court precedent, however, the Sixth Circuit has modified the subjective component of the deliberate-indifference inquiry for pretrial detainees. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316-17 (6th Cir. 2023) (explaining the divergence in the Fourteenth and Eighth Amendment analysis articulated in *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021) in response to *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

After *Brawner*, the subjective element has been modified to "lower the subjective component from actual knowledge to recklessness." *Id*. So, a plaintiff making out a deliberate-indifference claim under the Fourteenth Amendment must now show: (1) that the detainee possessed a sufficiently serious medical need; and (2) that the officer "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 317 (quoting *Brawner*, 14 F.4th at 596) (alteration in original). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Grote v. Kenton Cnty., Ky.,* 85 F.4th 397, 405 (6th Cir. 2023) (internal quotation omitted).

Here the record reflects that Plaintiff began receiving treatment immediately after his fall. An x-ray of the affected area found no fracture, and Plaintiff was prescribed various drugs to deal with the pain. Further, once Plaintiff was referred to outside medical providers, a similar course of care was continued. At most, Plaintiff's allegations amount to disagreements regarding the course of care that he has received, as he has neither pointed out that he possessed a sufficiently

14

serious medical need, nor that either Defendant acted deliberately in the face of unjustifiably high risk of harm toward the Plaintiff. Typically, a disagreement with a medical provider's medical judgment is insufficient to establish a deliberate-indifference claim. *See Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018). Further, even if Plaintiff could show that he received constitutionally inadequate medical care, he has offered no expert medical evidence demonstrating that an alleged inadequate treatment caused him injury, which is fatal to his claims. *See King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014) (providing that "failure to provide medical expert testimony to establish a causal link between injury and the allegedly inadequate treatment thus dooms the deliberate indifference claim.")).

As Plaintiff has not established the requisite elements to support a deliberate-indifference claim, nor has Plaintiff provided medical evidence linking the supposed inadequate treatment with his injury, Defendants are also entitled to summary judgment on both deliberate-indifference claims as a matter of law.

## V.

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 120) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: August 4, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, pro se
        Counsel of record
4414.016

15