**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**TODD E. EDMONDS**                                                                        **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 3:23-CV-00237-JHM**

**JERRY COLLINS,** *et al*.                                                               **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion by Defendants Louisville/Jefferson County Metropolitan Government ("LMG"), Jerry Collins, David Puckett, and Meagan Kilkelly for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (DN 123).  Plaintiff Todd E. Edmonds filed a response.  (DN 131).  Defendants filed a reply.  (DN 135).  Thus, this matter is fully briefed and stands ripe for decision.

**I.**

Plaintiff is incarcerated as a pretrial detainee at the Louisville Metro Department of Corrections ("LMDC").  Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional and civil rights.  (DN 1).  The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A and allowed a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim and a claim under Title II of the Americans with Disabilities Act ("ADA") against Defendant LMG.  (DN 11).  Further, the Court directed Plaintiff to file an amended complaint properly naming other Defendants.  (*Id*.).  Thus, Plaintiff filed an amended complaint.  (DN 13).  Upon review of the amended complaint, the Court allowed individual-capacity claims to proceed thusly: First Amendment free-exercise claims against Defendants Jerry Collins and Meagan Kilkelly; Fourteenth Amendment equal-protection claims against Defendants Collins and Kilkelly; Fourteenth Amendment claims for deliberate indifference

1

to Plaintiff's health/safety against Defendants Collins, David Puckett, Renesha Stone, and Jeri Hayden; and Fourteenth Amendment claims for deliberate indifference to a serious medical need against Defendants Stone and Hayden. (DN 16). Defendants LMG, Puckett, Collins, and Kilkelly now move for summary judgment on Plaintiff's claims against them.[1] (DN 123).

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

---

[1] This Memorandum Opinion and Order only considers claims against Defendants LMG, Collins, Puckett, and Kilkelly. Claims against other Defendants shall be adjudicated via separate Memorandum Opinion and Oder.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs.*, Inc., 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

### *A. Plaintiff's Allegations*

Plaintiff was confined at the Louisville Metro Department of Corrections ("LMDC") from approximately December 14, 2021, through February 15, 2024. (DN 123-2, PageID #: 2080; DN 123-3, PageID #: 2084). Plaintiff has a left above-the-knee amputation and used both a cane and a prosthetic leg during the relevant period. (DN 13, PageID #: 86, DN 123-5, PageID #: 2087; DN 123-6, PageID #: 2123; DN 131-11, PageID #: 2234). The Court permitted claims to proceed against LMG under both the ADA and the RLUIPA; First Amendment free-exercise and Fourteenth Amendment equal-protection claims against Jerry Collins and Meagan Kilkelly in their individual capacities; and Fourteenth Amendment deliberate-indifference claims against Collins and David Puckett in their individual capacities. (DN 16).

Plaintiff alleges that LMDC officials housed him in several general-population dormitories that were not accessible to a person with one leg, despite the visible nature of his disability and his requests for accessible housing. (DN 13, PageID #: 86; DN 131, PageID #: 2196-2000). Plaintiff maintains that on January 27, 2022, while housed in H6 Dorm 1, he fell while attempting to use the shower or restroom area, struck his head, and injured his right shoulder and neck. (DN 13, PageID #: 86; DN 131, PageID #: 2196-97). LMDC's incident report provides that officers found Plaintiff lying on the restroom floor, that Plaintiff complained of right-shoulder pain and reported striking his head, and that his prosthetic leg came off while officers assisted him to a chair. (DN 123-6, PageID #: 2123-25). Plaintiff alleges that the fall caused injuries that were not fully apparent until later and that have required continuing treatment, including injections and cervical procedures. (DN 13, PageID #: 86; DN 131-11, PageID #: 2234-36).

Plaintiff further alleges that on July 27, 2022, while housed in Dorm 3B, he fell while entering the shower after the chair he was using broke, cutting his amputated limb in five places. (DN 123-7, PageID #: 2127). In the grievance concerning that incident, Plaintiff stated that the shower lacked a handicap railing and that medical staff provided bandages but not the antibiotic ointment he requested. (*Id.*). The grievance response states that Plaintiff later reported the cuts were healing and that he no longer needed antibiotic ointment. (*Id.*). Plaintiff attributes both falls and his resulting injuries to Collins and Puckett, asserting that Collins received letters concerning his housing, that the Mayor's office contacted Collins about Plaintiff's placement, and that Puckett spoke with Plaintiff face-to-face and responded to an action request seeking accessible housing. (DN 131, PageID #: 2194, 2199-2200; DN 131-7, PageID #: 2219-23).

Plaintiff also alleges that he was denied an opportunity to attend religious services for approximately fifteen to seventeen months while other LMDC inmates were permitted to attend.

4

(DN 1, PageID #: 4; DN 123-1, PageID #: 2050-52; DN 123-11, PageID #: 2143). Plaintiff identifies himself as non-denominational and maintains that he studies and participates in multiple religious traditions while searching for truth. (DN 1, PageID #: 9; DN 123-1, PageID #: 2052; DN 123-11, PageID #: 2145). Plaintiff sought to participate in Ramadan, Jumu'ah, and other religious services, but LMDC personnel informed him that Ramadan and Jumu'ah were reserved for inmates self-identified as Muslim and that group services were generally unavailable to inmates assigned to the medical unit. (DN 123-10, PageID #: 2139-41; DN 123-11, PageID #: 2143-45). Plaintiff contends that these restrictions discriminated against him because of both his religious classification and his placement in medical housing. (DN 1, PageID # 9.).

*B. Defendants' Motion for Summary Judgment*

Defendants maintain that Plaintiff was housed primarily on LMDC's second-floor medical wing, designated as "J2," which was handicap accessible. (DN 123-2, PageID #: 2080-83). Plaintiff's cell-assignment history reflects that, after intake, he was housed outside J2 from December 21, 2021, through January 14, 2022; January 25 through February 12, 2022; July 19 through July 28, 2022; March 14, 2023; and April 27 through April 28, 2023. (DN 123-3, PageID #: 2084). The January 27, 2022, incident occurred while Plaintiff was assigned to H6 Dorm 1, and the July 27, 2022, incident occurred while Plaintiff was assigned to J3N-3B. (DN 123-3, PageID #: 2084; DN 123-6, PageID #: 2123; DN 123-7, PageID #: 2127).

According to Kilkelly and Puckett, LMDC's medical-services provider, Wellpath, controlled whether an inmate could be placed on or removed from J2, and classification personnel relied on Wellpath's medical clearance when assigning inmates to general population. (DN 123-2, PageID #: 2081; DN 123-4, PageID #: 2086). Kilkelly states that classification staff did not have access to an inmate's specific medical information, were not qualified to assess mobility

5

limitations, and might not meet an inmate face-to-face when making a cell assignment. (DN 123-2, PageID #: 2081). Kilkelly further avers that Collins had no role in Plaintiff's general-population placement. (*Id.*). Puckett similarly states that classification staff could not place Plaintiff in medical housing without medical authorization. (DN 123-4, PageID #: 2086).

Defendants rely on LMDC's inmate notes to show that medical personnel repeatedly directed Plaintiff's movements to and from J2. Medical requested Plaintiff's transfer to J2 on January 14, 2022; Nurse Jeri Hayden cleared Plaintiff for general population on January 25, 2022; and Puckett denied Plaintiff's February 9, 2022, action request for accessible housing on the stated ground that "only medical can determine this inmate's request and not classification." (DN 123-5, PageID #: 2089-90). Medical returned Plaintiff to J2 on February 12, 2022, and later directed additional movements within J2. (*Id.*, PageID #: 2091, 2093, 2095). Nurse Hayden again cleared Plaintiff for general population on July 19, 2022, and medical returned him to J2 on July 28, 2022. (*Id.*, PageID #: 2095-96). Defendants therefore contend that Collins and Puckett neither made the medical-placement decisions nor caused Plaintiff's injuries. (DN 123-1, PageID #: 2062-68).

With respect to religious services, Kilkelly states that inmates assigned to J2 were not permitted to attend group activities in general population without medical clearance, and that LMDC lacked the resources to offer group services directly in the medical unit during the relevant period. (DN 123-2, PageID #: 2083). Kilkelly states that the restriction applied to religious and nonreligious group activities alike and did not prevent J2 inmates from worshipping privately, obtaining religious materials, worshipping with inmates in their housing area, or requesting private clergy visits. (*Id.*, PageID #: 2082-83). Puckett likewise states that Plaintiff could worship privately, obtain religious materials, participate in educational services, or request a visit from clergy. (DN 123-4, PageID #: 2085-86).

Defendants further maintain that access to Jumu'ah and Ramadan was limited to inmates who identified as Muslim because seating and volunteer resources were limited and because non-Muslim participants had previously disrupted services. (DN 123-2, PageID #: 2082). Kilkelly states that services were available to non-Muslims who wished to learn about Islam and that Plaintiff was offered an opportunity to change his religious designation to Muslim but declined. (*Id.*). LMDC's inmate notes state that on March 27 and March 29, 2023, Plaintiff requested placement on the Ramadan list, stated that he was not Muslim or was non-religious, and declined offers to request a change in his religious preference. (DN 123-5, PageID #: 2108). Defendants therefore contend that the challenged restrictions were neutral, reasonably related to security and resource limitations, and did not substantially burden a sincerely held religious belief. (DN 123-1, PageID #: 2068-76).

Defendants also seek summary judgment based on exhaustion. Stephanie Brown, an LMDC grievance counselor, states that she reviewed Plaintiff's grievance history and found no grievance concerning the January 27, 2022, shower fall. (DN 123-9, PageID #: 2136-37). Brown explains that LMDC grievances were submitted on triplicate forms and that an inmate who received no response within forty-five days could proceed directly to the appeal stage. (*Id.*; DN 123-8, PageID #: 2132-33). Defendants characterize Grievance No. 8439 as addressing the cuts and medical care following the July 2022 fall rather than Plaintiff's housing assignment or the conduct of Collins and Puckett. (DN 123-7, PageID #: 2127; DN 123-1, PageID #: 2059-63). Defendants further contend that Plaintiff filed this action on May 8, 2023, before the appeals of Grievance Nos. 9163 and 9195 concerning religious services were decided and returned. (DN 123-10, PageID #: 2140-41; DN 123-11, PageID #: 2144-45; DN 135, PageID #: 2291-93).

Finally, Defendants argue that some claims are barred by the statute of limitations; that Plaintiff's release from LMDC moots his request for injunctive relief under RLUIPA; that the evidence does not establish municipal liability under the ADA or equal-protection and free-exercise violations by Collins and Kilkelly; and that Collins, Kilkelly, and Puckett are entitled to qualified immunity. (DN 123-1, PageID #: 2058-79).

### C. Plaintiff's Response

Plaintiff responds that he did submit a grievance on January 28, 2022, concerning his safety and accessibility after the first fall, but never received either a copy or a response. (DN 131, PageID #: 2193-94; DN 136, PageID #: 2305). Plaintiff contends that he repeatedly sought to use LMDC's grievance process, filed additional grievances concerning unanswered grievances, wrote to Collins, and contacted outside entities, including the United States Department of Justice, the ACLU, and a federal judge, but the process remained unavailable or ineffective. (DN 131, PageID #: 2194; DN 131-2, PageID #: 2206-11; DN 131-5, PageID #: 2215-17). Plaintiff also argues that exhaustion was unnecessary to the extent he challenges the constitutionality of Kentucky's inmate-classification regulation, 501 KAR 3:110. (DN 131, PageID #: 2195-96).

Plaintiff disputes Defendants' exhaustion argument concerning his religious claims. He contends that LMDC failed to respond to Grievance No. 9163 within the period stated in its policy and did not document any reason for the delay. (DN 131, PageID #: 2197). As to Grievance No. 9195, Plaintiff points to the dates appearing on the forms and argues that the record suggests he checked the appeal box before the initial response was returned, which he views as evidence that LMDC's grievance process was irregular or impossible to complete. (*Id.*, PageID #: 2198; DN 131-10, PageID #: 2226-33). Plaintiff maintains that he did not abandon the grievance process and that he attempted to appeal the issues raised in his claims. (DN 136, PageID #: 2305-06).

8

On the merits of his housing claims, Plaintiff argues that his one-leg amputation was obvious; that Puckett spoke with him face-to-face and responded to his accessible-housing request; and that Collins received letters concerning Plaintiff's conditions and was contacted by the Mayor's office. (DN 131, PageID #: 2194, 2199-2200). Plaintiff relies on Collins's responses to requests for admission, in which Collins acknowledged receiving some letters from Plaintiff and a message from an employee in the Mayor's office regarding Plaintiff. (DN 131-7, PageID #: 2219-23). Plaintiff contends that Collins and Puckett knew that placement in a non-accessible dorm created a substantial risk of falling and failed to take reasonable steps to prevent that risk. (DN 131, PageID #: 2199-2200; DN 136, PageID #: 2305-06).

Plaintiff further contends that his injuries were not limited to the immediate effects of the January 2022 fall. He states that his neck symptoms developed or became apparent later and that he has undergone trigger-point injections, cervical medial-branch blocks, and other treatment. (DN 131, PageID #: 2199; DN 136, PageID #: 2305-06). Plaintiff submits University of Louisville medical records documenting chronic neck and myofascial pain, a reported history of neck pain following a fall in jail, and multiple injections and cervical procedures. (DN 131-11, PageID #: 2234-36).

Regarding religious services, Plaintiff argues that the grievance responses did not initially rely on a blanket rule barring J2 inmates from group activities but instead represented that the chaplain was arranging religious services for inmates assigned to the medical unit. (DN 123-10, PageID #: 2141; DN 123-11, PageID #: 2145; DN 131, PageID #: 2200-01). Plaintiff states that services eventually began on J2 in June 2023 but ceased approximately one and one-half months later. (DN 131, PageID #: 2200). He also maintains that he was never asked to change his religious designation and that he should not have been required to identify with a single denomination to

9

attend services or study a faith.  (DN 123-10, PageID #: 2139-41; DN 123-11, PageID #: 2144-45; DN 136, PageID #: 2305-06).

Plaintiff denies abandoning his ADA and RLUIPA claims and maintains that Collins, Kilkelly, and Puckett are not entitled to qualified immunity because, in his view, their conduct violated established constitutional and statutory protections for incarcerated persons with disabilities and for religious exercise.  (DN 131, PageID #: 2200-02; DN 136, PageID #: 2305-06).

### D. Defendant's Reply

In reply, Defendants argue that Plaintiff's assertion that he filed a January 2022, grievance is unsupported because he produced neither the retained pink copy nor evidence that LMDC received the grievance.  (DN 135, PageID #: 2288-90).  They further argue that Plaintiff does not identify its contents, allege that it named Collins or Puckett, or show that he pursued a direct appeal after forty-five days without a response.  (*Id.*, PageID #: 2289-91).

Defendants maintain that Plaintiff's completed religious grievances show the process was available, but that the appeal decisions on Grievance Nos. 9163 and 9195 were not final before Plaintiff filed suit.  (*Id.*, PageID #: 2291-93).  They also contend that Plaintiff abandoned Metro's ADA and RLUIPA liability and Collins and Kilkelly's equal-protection liability by failing to address those arguments.  (*Id.*, PageID #: 2293-94).

As to deliberate indifference, Defendants contend that Collins's admissions establish only unspecified letters and an April 2023 message from the Mayor's office, which postdated Plaintiff's January and July 2022 falls and do not show causation.  (*Id.*, PageID #: 2294-96).  They likewise argue that Puckett's alleged knowledge of Plaintiff's amputation does not establish causation because classification personnel could not change his medical housing without Wellpath's approval.  (*Id.*, PageID #: 2296-97).

10

Finally, Defendants argue that Plaintiff did not meaningfully dispute that J2's group-activity restriction applied neutrally, reflected safety and resource concerns, and left alternative means of worship available.  (*Id*., PageID #: 2297-99).  They also maintain that Plaintiff cites no analogous authority showing that Collins, Kilkelly, or Puckett violated clearly established law.  (*Id*., PageID #: 2299-2301).

**IV.**

*A. Failure to Exhaust Administrative Remedies*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court, interpreting § 1997e, has expressly stated:  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof.  *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).  Accordingly, summary judgment may be granted "'only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.'"  *Id*. at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).  Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Id*. at 455-56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist*., 270 F.3d 1036, 1056 (6th Cir. 2001)).  The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an

11

administrative policy that governs the filing of grievances and shows that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules', rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford*, 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90-91. But an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

In this instance, Plaintiff has failed to exhaust administrative remedies regarding both his First Amendment free-exercise and Fourteenth Amendment deliberate-indifference claims. LMDC's grievance policy divides the grievance process into three stages: (1) filing the grievance, (2) resolution of the grievance, and (3) the appeal, if necessary. (DN 123-8). Importantly, to exhaust a grievance process, all steps must be completed. *See Jones*, 549 U.S. at 218. Further, the grievance policy provides that the grievance must be filed within five working days of the grieveable incident, must include all aspects of the issue the grievant wants addressed, and must identify all staff members involved. (*Id.*). Lastly, an inmate who has filed a grievance but has not

received a response within forty-five days is permitted to bypass the initial steps and proceed directly to the appeal stage.  (*Id*.).

With regard to Plaintiff's First Amendment free-exercise claim against Defendants Collins and Kilkelly, Plaintiff failed to fully exhaust his claims prior to filing the instant suit; accordingly, Defendants Collins and Kilkelly are entitled to summary judgment on Plaintiff's First Amendment free-exercise claim.

Plaintiff filed two grievances (Grievance # 9163 and Grievance # 9195) concerning his lack of access to religious services and appealed the responses; however, Plaintiff filed suit before the appeals process was completed. (DN 123-10; DN 123-11).  Turning to Grievance # 9163, Plaintiff filed it on March 29, 2023, and it was returned to Plaintiff on May 2, 2023.  (DN 123-10). Importantly, Plaintiff checked the box signaling that he wished to appeal the grievance resolution. (*Id*.).  The appeal was adjudicated on May 11, 2023, returned to Plaintiff on May 16, 2023.  (*Id*.). Notably, both the appeal response and the return to the Plaintiff occurred after Plaintiff filed the instant complaint on May 8, 2023. (*Id*.).  Thus, Grievance # 9163 was unexhausted at the time of filing and cannot be used to support Plaintiff's free-exercise Claim.

Similarly, Grievance # 9195 was filed on April 10, 2023, and reviewed by a grievance counselor on April 17, 2023.  (DN 123-11).  Plaintiff received a copy of the resolution on April 26, 2023, and checked the box on the form signaling he wished to appeal.  (*Id*.).  Plaintiff filed an appeal on April 25, 2023, (notably, a day prior to actually receiving the grievance response) and it was answered on May 8, 2023, and returned to Plaintiff on May 16, 2023.  Plaintiff filed the instant complaint 8 days prior to receiving the results of his appeal.  Thus, the instant complaint was filed without all administrative remedies exhausted.  Therefore, Plaintiff did not adequately redress his complaints through the proper procedures prior to filing suit necessitating denial of his First

Amendment free-expression claims.    Consequently, summary judgment is appropriate for Defendants Collins and Kilkelly on Plaintiff's First Amendment free-exercise claims.

With regard to Plaintiff's deliberate-indifference to Plaintiff's health and/or safety claim against Defendant's Collins and Puckett, Plaintiff has failed to exhaust his administrative remedies prior to filing the instant complaint; accordingly, summary judgment is appropriate for Defendants Collins and Puckett on Plaintiff's Fourteenth Amendment deliberate-indifference to health and/or safety claims.   Plaintiff alleges he had two falls while using non-handicap accessible dorms while housed at LMDC.   Notably, Plaintiff filed no grievance regarding the first incident that occurred on January 27, 2022.   (DN 123-9).   As no grievance was filed for the January 27, 2022, fall, Plaintiff has obviously not exhausted his administrative remedies for such action.   With regard to Plaintiff's second fall, occurring on July 22, 2022, Plaintiff filed a grievance on July 28, 2022 (Grievance # 8439), but it only raised concerns about medical care he received from the Wellpath Defendants[2] subsequent to the fall.   (DN  123-7).   Grievance # 8439 and the subsequent response provide:

> ON 7/27/22 IN DORM 3B I FELL WHILE GETTING IN THE SHOWER.  I FELL ON THE CHAIR THAT BROKE AND CUT MY LEG IN FIVE PLACES THERE WAS NO HANDICAP RAILING IN THE RESTROOM, SHOWER, ETC.  I HAVE ONE LEG AND IN A WHEELCHAIR.  I'VE SHOWN THE CUTS TO SEVERAL NURSES AND HAVE ASKED FOR ANTIBIOTICS SO THAT MY LEG WON'T GET INFECTED.  INMATE ALLEGES ALL I WAS GIVEN WAS BANDAIDS.  [PLAINTIFF REQUESTED] THAT I HAVE PROPER MEDICAL ATTENTION SO THAT MY LEG DON'T GET INFECTED.

(*Id*.).

Subsequently, Defendant Stone responded:

> I spoke with [Plaintiff] on 8/4/2022 and [Plaintiff] stated that you no longer needed triple antibiotic ointment, the cuts were healing and someone in the dorm had given you ointment to use.  If you need further medical assistance, please notify medical staff.

---

[2] The Wellpath Defendants are Jeri Hayden and Renesha Stone.

(*Id*.).

LMDC's grievance policy requires an inmate to list "every aspect of the issue the grievant wants addressed", as well as "specifically identify the staff involved."  (DN 123-8, PageID #: 2131). Here, Grievance # 8439 does not implicate Defendants Collins or Puckett effectively preventing Defendants from addressing his needs prior to the filing of this complaint.  Accordingly, Plaintiff has failed to exhaust his administrative remedies regarding alleged deliberate-indifference to his health and/or safety.  Accordingly, summary judgment is appropriate on these claims for Defendants Collins and Puckett.

### B. Americans with Disabilities Act Claim

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.  The Sixth Circuit has recognized two cognizable claims under Title II: (1) intentional discrimination and (2) failure to make a reasonable accommodation.  *Keller v. Chippewa Cnty*., 860 F. App'x 381, 385 (6th Cir. 2021); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004).

Under both claims, a Plaintiff must prove that he: (1) is disabled; (2) was "qualified" to take part in the "services, programs, or activities" of the public entity; (3) was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities"; and (4) this exclusion or denial occurred "by reason of" his disability.  *See Keller*, 860 F. App'x at 385-86 (quoting 42 U.S.C. § 12132 (internal quotations omitted)).

In terms of intentional discrimination, "to successfully bring an intentional-discrimination claim, a plaintiff must show unfavorable treatment on the basis of his disability. Proof of the

15

defendant's motive is key.  After all, the plaintiff must prove that his disability caused the defendant's discriminatory behavior…the "but-for cause" for ADA claims[.] And the defendant must act intentionally" *Finley v. Huss*, 102 F.4th 789, 823 (6th Cir. 2024).  Here, Plaintiff has not made a showing that Plaintiff's placement in housing was motivated by LMG's desire to show unfavorable treatment on the basis of his status as an amputee.  Accordingly, Defendant LMG is entitled to summary judgment on this claim.

With regard to a failure to accommodate claim, Plaintiff must show that LMG reasonably could have accommodated his disability but refused to do so. *Finley*, 102 F. 4th at 820. Further, the Plaintiff must show that the failure to accommodate impeded his ability to participate in or benefit from a program or service. *Id*.  Notably, Plaintiff does not alleged that he suffered from any failure to accommodate his amputee status while being housed at LMDC; rather, his claims revolve around the shower facilities in general and his ability to safely use them.  Defendants contend that of the 793 days that Plaintiff was housed at LMDC, Plaintiff was housed in the medical wing of the LMDC  for all but 54 of them.  For the 54 days that he was not housed in the medical wing of LMDC, Plaintiff was cleared to be held in different housing assignments by Wellpath medical staff.  (DN 123-1, PageID #: 2064-65).  Defendants contends that Plaintiff's housing in the non-medical wing was based on consultation with medical staff and that "if a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Accordingly, because Plaintiff was housed in the medical wing for his entire stay other than when cleared by medical staff for alternative housing, Plaintiff's inability to provide evidence that

16

LMG did not accommodate his status as an amputee defeats his claim. Thus, Defendant LMG is entitled to summary judgment on this claim.

### C. Religious Land Use and Institutionalized Persons Act Claim

The Court allowed Plaintiff to prosecute a claim against LMG for injunctive relief based on Plaintiff's assertion that he had not been allowed to attend religious services in seventeen months. (DN 11, PageID #: 79). Importantly, the Sixth Circuit has held that a request for injunctive relief under the RLUIPA is moot once an inmate leaves the facility. *See Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025) (holding that a claim for injunctive relief under the RLUIPA was moot because the movant had been moved to a new prison and Defendants could not provide the injunctive relief requested). Here Plaintiff was confined at the LMDC from approximately December 14, 2021, through February 15, 2024. (DN 123-2, PageID #: 2080; DN 123-3, PageID #: 2084). As he is no longer held at the LMDC, injunctive relief is not appropriate. Accordingly, Defendant LMG is entitled to summary judgment on Plaintiff's RLUIPA claim.

### D. Fourteenth Amendment Equal Protection Claims

The equal protection clause is violated when a state actor treats a person or group differently than other, similarly situated persons or groups, and does so with discriminatory intent. *See Maye v. Klee*, 915 F.3d 1076, 1085-86 (6th Cir. 2019). Plaintiff must show that he was "denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was "intentionally discriminated against because of [his] membership in a particular class, not merely that [he] was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

In this instance, Plaintiff has not provided what "particular class" is being discriminated against. Generally, Plaintiff's equal protection clause claims stem from being denied the ability

17

to attend Islamic religious services as a non-denominational religious person. As Plaintiff has not alleged what protected class he is a part of that is being discriminated against, Plaintiff cannot satisfy the elements of his equal-protection claim. *See Iheama v. Mahoning Cnty. Mental Health Bd.*, 115 F. Supp. 2d 866, 869 (N.D. Ohio 2000) (citing *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir.1996) (holding that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). Accordingly, Defendants Collins and Kilkelly are entitled to summary judgment on Plaintiff's equal protection claims.

### V.

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 123) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: August 4, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, pro se
       Counsel of record
4414.016

18